CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 02 2013

JULIA C. DUDLEY, CLERK
BY:
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| RAHMON R. ROBEY, | ) | |
| **Plaintiff,** | ) | Civil Action No. 7:13-cv-00524 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| WARDEN MATHENA, *et al.*, | ) | By: Samuel G. Wilson |
| **Defendants.** | ) | United States District Judge |

Plaintiff, Rashmon Rashad Robey, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his rights by placing him in the segregation unit at Red Onion State Prison ("Red Onion"). Upon review of his complaint, the court finds that Robey has failed to state a claim upon which relief may be granted and, therefore, dismisses his complaint pursuant to 28 U.S.C. § 1915A(b)(1).

I.

Robey alleges that he is currently housed in the segregation unit at Red Onion and that while in segregation, he is "afforded only 3 showers a week, recreation 5 times a week in a steel cage for one hour at a time, [he] no longer can buy consumable items from commissary, [he] can't watch TV nor listen to the JP4 radio device, and [he is] only allowed to speak to [his] family (via telephone) twice a month." Robey argues that these are "the harshest conditions in the Virginia Department of Corrections." Robey complains that he has "committed no institutional infraction" to warrant his placement in segregation.

In response to Robey's grievances, which Robey provided to the court with his complaint, Warden Mathena states that "[s]egregation is not a disciplinary measure but a means of custodial or protective control. Segregation consists of personal protection and custodial management measures exercised by the facility for the welfare of the offender or the facility, or

both." See also, Va. Dep't of Corr., Operating Procedure 861.3(IX)(A)(1) (stating the same). Warden Mathena also writes that "[o]ffender status will be formally reviewed by the I[nsitutional] C[lassification] A[uthority] at least once every ninety days." Id. at (IX)(A)(5) (stating the same).

## II.

To the extent Robey asserts that his confinement in the segregation unit constitutes cruel and unusual living conditions in violation of the Eighth Amendment, it fails. Although the Eighth Amendment protects prisoners from cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement. "To the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 471-72 (4th Cir. 1999) (long-term placement in segregation or maximum custody is not cruel and unusual punishment). To state a claim of constitutional significance regarding prison conditions, a plaintiff must allege that the living conditions violated contemporary standards of decency and that prison officials were deliberately indifferent to those conditions. Wilson v. Seiter, 501 U.S. 294 (1991). In addition, a plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993). While being confined in the segregation unit may be uncomfortable, restrictive, and inconvenient, Robey has not alleged anything to suggest that the conditions violate contemporary standards of decency, that

2

either of the defendants were deliberately indifferent to those conditions, or that he suffered a serious or significant mental or physical injury as a result of his confinement in isolation. Further, there is no indication that the conditions have created an unreasonable risk of future serious harm. Accordingly, the court finds that Robey has failed to state a claim under the Eighth Amendment.

### III.

To the extent Robey claims that his confinement in the segregation unit constitutes a violation of his due process rights under the Fourteenth Amendment, it also fails. To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, liberty interests are limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995); see also Beverati, 120 F.3d at 502 (holding that a six-month term in segregation did not impose an atypical hardship and, therefore, implicated no liberty interests when the inmates alleged that their cells were infested with vermin and smeared with urine; that no outside recreation was permitted; that there were no religious services available; and that food was served in considerably smaller portions).[1]

---

[1] In Wilkinson v. Austin, 545 U.S. 209 (2005), the Court found that inmates did have a liberty interest in avoiding assignment to a state's supermax prison. In reaching this conclusion, the Court carefully distinguished the supermax facilities from normal segregation units on three grounds. First, inmates in the supermax facility were "deprived of almost any environmental or sensory stimuli and of almost all human contact." Wilkinson, 545 U.S. at 214. Second, they were assigned for "an indefinite period of time, limited only by [the] inmate's sentence." Id. Third, once assigned to supermax "[i]nmates otherwise eligible for parole lose their eligibility while incarcerated" at the facility. Id. at 215. After noting other onerous conditions of confinement, including that the cells were lighted

Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Further, prisoners do not have a constitutionally recognized liberty interest in a particular security classification or a constitutional right to be confined in a particular prison. Hewitt v. Helms, 459 U.S. 460, 468 (1983); Meachum v. Fano, 427 U.S. 215, 224 (1976). The conditions in the segregation unit at Red Onion may in fact be more restrictive than those applied to inmates in the general population or at other facilities; however, Robey has failed to allege facts showing that the hardship is so significant or atypical that he has a liberty interest in remaining out of segregation. Accordingly, the court finds that Robey has failed to state a claim under the Fourteenth Amendment.

## IV.

For the stated reasons, Robey's action is dismissed pursuant to § 1915A(b)(1), for failing to state a claim upon which relief may be granted.

**ENTER**: This 2nd day of December, 2013.

_____
United States District Judge

---

twenty-four hours per day, the court stated: "While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." Id. at 224. The instant case is readily distinguishable from Wilkinson.